# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| APRIL L. LICATA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION |
| v. | ) |
| | ) No. 16-1323-JWL |
| NANCY A. BERRYHILL,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding error in the Administrative Law Judge's (ALJ) credibility determination, the court ORDERS that the decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this decision.

## I. Background

---

[1]On Jan. 20, 2017, Nancy A. Berryhill became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff applied for DIB, alleging disability beginning September 4, 2012. (R. 42, 192). Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision. She claims a multitude of errors in the ALJ's residual functional capacity (RFC) assessment, arguing that he erred in finding that fibromyalgia is not a medically determinable impairment in the circumstances of this case,[2] that he failed to specifically identify RFC limitations resulting from her migraine headaches, that he erred in determining the credibility of Plaintiff's allegations of pain, and that he failed to adequately explain the bases for discounting Dr. Luinstra's medical opinion.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S.

_____

[2]The court understands that the determination of medically determinable impairments occurs at step two of the sequential evaluation process used by the Commissioner, and the RFC assessment occurs after step three but before step four of the process. 20 C.F.R. § 404.1520. But, for reasons unexplained in her Social Security Brief, Plaintiff included this argument within the portion of her Brief captioned "The ALJ Erroneously Determined Plaintiff's Residual Functional Capacity at Step 4." (Pl. Br. 4).

389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804

(10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that

of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting

Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the

determination whether substantial evidence supports the Commissioner's decision is not

simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v.

Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a

claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th

Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a

determination can be made at any of the steps that a claimant is or is not disabled,

evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting

Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether

claimant has engaged in substantial gainful activity since the alleged onset, whether she

has a severe impairment(s), and whether the severity of her impairment(s) meets or equals

the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt.

P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner

assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step

four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process--

determining whether, in light of the RFC assessed, claimant can perform her past relevant

work; and whether, when also considering the vocational factors of age, education, and

work experience, claimant is able to perform other work in the economy.  Wilson, 602

F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on

Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v.

Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182,

1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to

the Commissioner to show that there are jobs in the economy which are within the RFC

assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds that remand is necessary because the ALJ failed to adequately

explain his credibility determination or to affirmatively link it to the record evidence.

Consequently, the court need not and does not address the remaining allegations of error.

Although the court harbors serious doubt whether the ALJ erred in his step two evaluation

of fibromyalgia, on remand the Commissioner would be well served to once again apply

step two of the evaluation process.

II.     Discussion

The ALJ expressed the bases for his finding that Plaintiff's allegations of

symptoms are "only partially credible:"

The claimant has continued to complain of pain in the wrists, shoulders, and arms (Exhibit 1F). However, she reported to her doctor that she had been encouraged in the past to have carpal tunnel surgery in the past [sic], but had declined. She continued to work at jobs that required significant typing, which only worsened the symptoms. Despite her continued pain, she also advised her doctor that she would prefer no medications while at other times she was requesting narcotic medications (Exhibit 1F). Even Dr. Luinstra stated he did not sense narcotics are reasonable in this condition. In addition, the claimant reported to Dr. Luinstra that she had obtained relief from her pain with Tramadol, a non-narcotic medication, Ibuprofen, heat, ice and a wrist brace. She had had an epidural steroid injection, and reported it had helped with her pain. Testing has been kept to a minimum, with x-ray and MRI as the primary testing performed. There were no electromyography/nerve conduction studies done to confirm the diagnoses of carpal tunnel syndrome or cubital tunnel syndrome, and range of motion was normal. Her activities of daily living appear to be greater than she would like one to believe given her alleged level of pain.

(R. 51-52).

Plaintiff claims the ALJ erred in his credibility determination because he did not inquire or evaluate the reasons Plaintiff declined carpal tunnel surgery; did not explain why Plaintiff's credibility was hurt when she continued to work at jobs requiring significant typing; did not consider the reasons Plaintiff wanted to avoid pain medication; abstracted Dr. Luinstra's statement that he did not sense that narcotics are reasonable in this condition without recognizing that Dr. Luinstra limited his statement to "this time," and frequently prescribed narcotic medication on other occasions;[3] found Plaintiff's

_____

[3]The court notes that most of the record evidence which Plaintiff cites in support of this assertion consists of citations to exhibit 6F, which is not a treatment record from Dr. Luinstra at all, but is a one-page case analysis from a state agency physician, Dr. Geis. (R. 386). The court attempted to locate records corresponding to Plaintiff's citations but was unable to do so. Plaintiff's last citation in this string was to page 77 of exhibit 6F (Pl. Br. 10), but the administrative record simply does not contain any medical record (or

request for narcotic pain medications to be drug-seeking behavior without an evidentiary basis in the medical records; relied on evidence of pain relief from seven months before her alleged onset date; failed to consider that although Plaintiff had an epidural steroid injection that helped with her pain, it helped only briefly; substituted his own medical judgment for that of Plaintiff's physicians in suggesting that electromyography or nerve conduction studies should have been done to confirm the diagnoses of carpal tunnel or cubital tunnel syndromes; found normal range of motion for Plaintiff's cervical spine; failed to cite evidence of specific daily activities which were "greater than she would like one to believe given her alleged level of pain;" and did not consider evidence which tended to support Plaintiff's credibility. (Pl. Br. 8-15).

The Commissioner argues that the ALJ properly discounted Plaintiff's allegations of symptoms based on inconsistencies. Specifically, she argues that the records were inconsistent with complaints of disabling pain, and her ability to engage in daily activities exceeded her alleged limitations, noting that she "could unload the dishwasher, wash and fold clothes, sweep the kitchen, and help cook meals at least three times per week." (Comm'r Br. 12). She argues that the ALJ included RFC "limitations to account for Plaintiff's medically determinable impairments," that the court should give the ALJ's credibility findings "special deference," id. (quoting Lax, 489 F.3d at 1089), and that Plaintiff argues merely that the evidence cited by the ALJ could support a different

_____

other exhibit for that matter) containing 77 pages or more. Counsel is cautioned to ensure his citations are accurate.

interpretation.  Id. (citing Lax, 489 F.3d at 1084).  In her Reply Brief, she reiterates her arguments and asserts that the Commissioner did not respond to them.  (Reply 12-16).

## A.      Standard for Evaluating Credibility

The court's review of an ALJ's credibility determination is deferential.  It is generally treated as binding on review.  Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983).  "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence.  Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.

Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility.  Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993) ("deference is not an absolute rule").  "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'"  Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173 (same).

## B.      Analysis

This is one of those instances where even affording the credibility determination due deference, the court must find error.  The ALJ's credibility findings, quoted above, are little more than conclusions in the guise of findings.  The ALJ did not link his findings to the record evidence, and the Commissioner points the court to little evidence discussed

7

elsewhere in the decision tending to support the findings. Like the ALJ, she cites to no

specific inconsistencies in the record evidence, and the daily activities she cites do not

suggest an ability to perform the activities required by light work. Although she argues

that an ALJ's credibility determination is worthy of special deference and that the ALJ

assessed RFC limitations to account for Plaintiff's impairments, she does not cite to

evidence supporting the credibility determination, Plaintiff's allegations of limitations

resulting from her impairments are contrary to the RFC limitations assessed, and a

credibility determination is not worthy of acceptance carte blanche.

Moreover, as Plaintiff points out, in his credibility determination the ALJ relied on

the fact that carpal tunnel surgery had been recommended but declined by Plaintiff and he

did not discuss the Frey factors to determine whether Plaintiff's refusal was justified.

See, Frey v. Bowen, 816 F.2d 508, 517 (10th Cir. 1987) (discussing four factors used

when considering whether a refusal to follow recommended treatment is justified). The

ALJ also relied on certain "facts" suggesting incredibility--such as pain relief from

epidural steroid injections--without discussing limitations on those facts as revealed in the

record evidence. And, the ALJ's reliance on the failure to use electromyography or nerve

conduction studies to confirm the diagnoses of carpal tunnel or cubital tunnel syndromes

is a classic example of an ALJ substituting his medical judgment for that of a physician.[4]

---

[4]The court notes that Plaintiff also alleges error in the ALJ's finding of "normal
range of motion for the cervical spine" (Pl. Br. 14), apparently based on the same
sentence in which the ALJ relied on the lack of electromyography or nerve conduction
studies. That sentence states: "There was no electromyography/nerve conduction studies

<u>Winfrey v. Chater</u>, 92 F.3d 1017, 1022-23 (10th Cir. 1996) (finding the ALJ erred in

substituting his own medical judgment for that of Dr. Spray when he relied on his own

opinion that the Minnesota Multiphasic Personality Inventory-2 was not a proper basis for

a diagnosis of somatoform disorder).  All of these errors in the credibility determination

require remand for a proper consideration of Plaintiff's allegations of limitations resulting

from symptoms of her impairments.

**IT IS THEREFORE ORDERED** that the Commissioner's decision shall be

REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42

U.S.C. § 405(g) REMANDING the case for further proceedings consistent herewith.

Dated this 27<u>th </u>day of June 2017, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**

---

done to confirm the diagnoses of carpal tunnel syndrome or cubital tunnel syndrome, and
range of motion was normal." (R. 52).  The ALJ did not find normal range of motion in
Plaintiff's cervical spine.  In context, there can be no doubt the ALJ's finding relates to
carpal tunnel and/or cubital tunnel syndromes, and therefore relates to range of motion in
Plaintiff's upper extremities, not her cervical spine.  As further support for this natural
reading, the ALJ had already noted that at her consultative examination Plaintiff "had
pain in the cervical region with <u>slight reduction</u> in range of motion.  (R. 51) (emphasis
added) (citing Ex 2F); <u>see also</u> (R. 365) (cervical spine left rotation 70 degrees--10
degrees less than normal range of 80 degrees).